

CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

*Michelle V. Larson*

**Signed August 22, 2024**

_____
**United States Bankruptcy Judge**

_____

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | |
| | § | **Case No. 22-30072-MVL11** |
| **JAMES BRADLEY LAGER and** | § | **Chapter 11** |
| **JBL HOSE SERVICE, LLC d/b/a** | § | |
| **TEXAS HOSE PRO,** | § | **(Jointly Administered)** |
| | § | |
| Debtors. | § | |

## ORDER ADMINISTRATIVELY CLOSING CASES

**I.    INTRODUCTION.**

The Small Business Reorganization Act (the "**SBRA**") went into effect on February 19, 2020, and amendments to the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") related thereto went into effect on December 1, 2022. The SBRA created a new subchapter of Chapter 11, allowing small business debtors seeking to reorganize the option to proceed under a set of alternative procedures that were designed to be more efficient and cost-effective than a traditional Chapter 11 case.

One of the most significant aspects of Subchapter V is that a debtor's election of these procedures requires the appointment of an individual to serve as a trustee that performs many of the same duties that are required of trustees in cases administered under Chapters 12 or 13. Among other things, a Subchapter V trustee has a specific duty to monitor and facilitate a debtor's progress toward confirmation of a plan of reorganization. Once that duty is fulfilled, the Subchapter V trustee is required to ensure that the debtor commences making timely payments pursuant to the reorganization plan.

There are two ways to confirm a plan of reorganization under Subchapter V—consensually, under 11 U.S.C. § 1191(a), or non-consensually, under 11 U.S.C. § 1191(b). To meet the requirements for confirmation of a consensual plan under subsection (a), a debtor must show that all the requirements of section 1129(a), other than subsection (a)(15), are met. Upon confirmation of a consensual plan, the debtor receives a discharge under section 1141(d), and the Subchapter V trustee's services are terminated pursuant to section 1183(c) upon a showing that the plan has been substantially consummated.[1]

If a plan of reorganization cannot be confirmed consensually, the debtor may seek what is referred to as "cramdown" or non-consensual confirmation under section 1191(b). In Subchapter V, a bankruptcy court may only confirm a plan of reorganization over the objections of creditors when the plan does not discriminate unfairly and has been found to be fair and equitable with respect to each class of claims or interests that is impaired and has not accepted the plan.[2] In cases

---

[1] *See* 11 U.S.C. § 1141(d) ("Except as otherwise provided in this subsection, in the plan, or in the order confirming the plan, the confirmation of a plan discharges the debtor from any debt that arose before the date of such confirmation…"); *see also* 11 U.S.C. § 1183(c) ("If the plan of the debtor is confirmed under section 1191(a) of this title, the service of the trustee in the case shall terminate when the plan has been substantially consummated…").

[2] *See* 11 U.S.C. §§ 1191(b) ("Notwithstanding section 510(a) of this title, if all of the applicable requirements of section 1129(a) of this title, other than paragraphs (8), (10), and (15) of that section, are met with respect to a plan, the court, on request of the debtor, shall confirm the plan notwithstanding the requirements of such paragraphs if the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan…").

confirmed non-consensually pursuant to section 1191(b), the debtor only receives a discharge "after completion by the debtor of all payments due within the first 3 years of the plan, or such longer period not to exceed 5 years as the court may fix."[3]

Although the Bankruptcy Code provides for the termination of the Subchapter V trustee's service upon substantial consummation in consensually confirmed cases, the Code is silent regarding termination of the Subchapter V trustee's service in a non-consensual case.[4]  This omission is logical.  Pursuant to section 1194(b), in a non-consensual case, the Subchapter V trustee will ***normally*** act as the plan-disbursing agent and remain in place until all of the payments have been made according to the terms of the confirmed plan.[5] However, as part of confirmation, the bankruptcy court has discretion to order otherwise.  Such is the case here.

Before the Court is the *Motion for Final Decree Pursuant to Section 350 of the Bankruptcy Code and Rule 3022 of the Federal Rules of Bankruptcy Procedure* (the "**Motion**") filed by the Reorganized Debtors, James Bradley Lager ("**Mr. Lager**") and JBL Hose Service, LLC d/b/a Texas Hose Pro ("**JBL**," together with Mr. Lager, the "**Reorganized Debtors**") at ECF No. 256 on April 16, 2024.[6]  By the Motion, the Reorganized Debtors seek entry of a Final Decree in the above-captioned bankruptcy case, ordering that (1) the cases be closed and (2) that this Court maintain jurisdiction to enforce the *Order Confirming Amended Subchapter V Plan of Reorganization* (the "**Confirmation Order**"), docketed at ECF No. 236.  In considering whether to grant the Motion, the Court is required to answer two questions: (1) whether a case administered under Subchapter V may be closed prior to the completion of the plan payments where a case has

---

[3] 11 U.S.C. § 1192.
[4] *See* 11 U.S.C. § 1183(c) ("If the plan of the debtor is confirmed under section 1191(a), the service of the trustee in the case shall terminate…").
[5] *See* 11 U.S.C. § 1194(b) ("If a plan is confirmed under section 1191(b) of this title, except as otherwise provided in the plan or in the order confirming the plan, the trustee shall make payments to creditors under the plan.").
[6] All ECF No. references are made in reference to the docket maintained by the Bankruptcy Clerk in Bankruptcy Proceeding No. 22-30072-mvl11 (Bankr. N.D. Tex. 2022), unless otherwise indicated.

3

been confirmed non-consensually pursuant to section 1191(b) of the Bankruptcy Code and the debtor has yet to receive a discharge; and (2) whether a Subchapter V trustee has ongoing duties which prevent her from being discharged prior to the completion of the plan payments in non-consensually confirmed cases.

For the reasons espoused below, the Court finds that a case administered under Subchapter V of Chapter 11 may be ripe for administrative closure prior to the completion of plan payments despite being confirmed non-consensually pursuant to section 1191(b) where a debtor has yet to receive a discharge.  Separately, the Court concludes that the determination of whether to discharge a Subchapter V trustee is a matter of discretion and should be determined based upon the particular facts and circumstances of each case.

## II.   JURISDICTION.

The Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b) and 157(a). This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(1) and (b)(2)(A).  Venue of this proceeding is proper under 28 U.S.C. §§ 1408 and 1409.

## III.   BACKGROUND.

These cases did not commence in a traditional fashion.  On January 17, 2022, Mr. Lager filed his voluntary petition for relief under Chapter 11 of the Bankruptcy Code.  *See* ECF No. 1. On January 25, 2022, Katharine Battaia Clark (hereinafter, "**Ms. Clark**" or the "**Trustee**") was appointed to be the Subchapter V trustee of Mr. Lager's bankruptcy estate.  ECF No. 16.  On March 10, 2022, JBL filed its voluntary petition for bankruptcy relief under Chapter 11.[7]  A few months later, on March 11, 2022, Behrooz P. Vida ("**Mr. Vida**") was appointed the Subchapter V trustee of the JBL bankruptcy estate.[8]  On March 14, 2022, this Court issued an *Order Authorizing*

---

[7] ECF No. 1 in Bankruptcy Proceeding No. 22-30439-mvl11 (Bankr. N.D. Tex. 2022).
[8] ECF No. 12 in Bankruptcy Proceeding No. 22-30439-mvl11 (Bankr. N.D. Tex. 2022).

*Joint Administration* of both cases.[9]   ECF No. 54.   A little over a year and a half later, after
substantial litigation unrelated to the Motion, Mr. Lager filed his *Amended Subchapter V Plan of
Reorganization* (the "**Plan**").   ECF No. 216.   On January 18, 2024, the Court entered the
Confirmation Order and the next day, the Court issued its standard *Chapter 11 Post-Confirmation
Order* (the "**Post-Confirmation Order**").   *See* ECF Nos. 236 and 238.

On February 7, 2024, the Reorganized Debtors filed the *Notice of (A) Entry of an Order
Confirming Amended Subchapter V Plan of Reorganization of James Bradley Lager and JBL Hose
Service LLC D/B/A Texas Hose Pro; and (B) Occurrence of the Effective Date*.   ECF No. 241.
Two days later, the Trustee filed her *First and Final Application for Compensation and
Reimbursement of Expenses*.   ECF No. 242.   On February 13, 2024, Mr. Vida similarly filed his
*Subchapter V Trustee's Application for Compensation and Reimbursement of Expenses*.   ECF No.
244.   In early March of 2024, each Subchapter V trustee filed a certificate representing that no
objections had been filed with respect to their respective fee applications.   *See* ECF Nos. 245 and
247.   On March 5, 2024, the Court entered an *Order Approving Trustee's First and Final
Application for Compensation and Expenses* at ECF No. 246, which provided that Mr. Lager was
to pay Ms. Clark's fees and expenses, plus 8% interest per annum, over 48 months in accordance
with the Plan.   Separately, the Court entered an *Order Granting Subchapter V Trustee's
Application for Compensation and Reimbursement of Expenses* at ECF No. 248, which provided
that Mr. Vida was to draw down on his allowed fees and expenses from the Fee Deposit and refund

---

[9] The Court will note that between the filing of these two cases, the Northern District of Texas changed its Subchapter V procedures, enacting a requirement that debtors electing treatment under Subchapter V of Chapter 11 must make interim payments to their Subchapter V trustees on a monthly basis in order to ensure payment of the Subchapter V trustees' professional fees upon confirmation or dismissal.   As such, although Mr. Lager was not required to make any interim payments for professional services rendered by the Trustee in the earlier filed Lager bankruptcy case, JBL paid $18,000.00 (the "Fee Deposit") to Mr. Vida over the life of its bankruptcy case.

5

Case 22-30072-mvl11   Doc 263   Filed 08/23/24   Entered 08/23/24 09:20:32   Desc
Main Document     Page 6 of 23


the remaining sum to JBL. In other words, Mr. Vida was paid in full, while any balance due to Ms. Clark was to be paid over the course of years under the terms of the Plan.[10]

On April 16, 2024, the Reorganized Debtors filed the instant Motion stating that the Plan has been substantially consummated and seeking entry of a final decree. *See* ECF No. 256, p. 4, ¶ 9. On April 25, 2024, Mr. Vida filed a *Chapter 11 Subchapter V Trustee's Report of No Distribution* in Bankruptcy Case No. 22-30439-MVL11 (the "**JBL Case**"), stating that: (1) no payments were due to Mr. Vida under the Plan; (2) according to JBL, the Plan was substantially consummated; and (3) certifying that *his* administration of the JBL bankruptcy estate had been completed.[11] The next day, at the request of Mr. Vida, the Court entered an *Order Discharging Trustee*, relieving Mr. Vida of his duties in the JBL Case. ECF No. 56. On May 7, 2024, Ms. Clark filed the *Trustee's Response (Opposed) to Motion For Final Decree Pursuant to Section 350 of the Bankruptcy Code and Rule 3022 of the Federal Rules of Bankruptcy Procedure* (as amended by ECF No. 259, the "**Response**"). The Reorganized Debtors filed their brief in reply (the "**Reply**") on May 21, 2024. *See* ECF No. 260. This Court conducted a hearing on the Motion on May 29, 2024 (the "**Hearing**"), after which the Court took the matter under advisement.

**IV. LEGAL STANDARD.**

Section 350 of the Bankruptcy Code provides, "(a) [a]fter an estate is fully administered and the court has discharged the trustee, the court shall close the case. (b) A case may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause." 11 U.S.C. § 350. Bankruptcy Rule 3022 implements section 350 and provides that, "[a]fter an estate is fully administered in a chapter 11 reorganization case, the court, on its

---

[10] By the time of the hearing on the Motion, the Court notes that Ms. Clark was in fact paid in full.
[11] *See* ECF No. 55 in Case No. 22-30439-mvl11 (Bankr. N.D. Tex. 2024).

6

own motion or on motion of a party in interest, shall enter a final decree closing the case." FED.

R. BANKR. P. 3022. The Advisory Committee Note provides:

> Entry of a final decree closing a chapter 11 case should not be delayed solely
> because the payments required by the plan have not been completed. Factors that
> the court should consider in determining whether the estate has been fully
> administered include (1) whether the order confirming the plan has become final,
> (2) whether deposits required by the plan have been distributed, (3) whether the
> property proposed by the plan to be transferred has been transferred, (4) whether
> the debtor or the successor of the debtor under the plan has assumed the business
> or the management of the property dealt with by the plan, (5) whether payments
> under the plan have commenced, and (6) whether all motions, contested matters,
> and adversary proceedings have been finally resolved.

FED. R. BANKR. P. 3022, Advisory Committee Note (1991). The Fifth Circuit has stated that these

factors "merely serve as a guide, … each need not be present before the entry of a final decree."

*In re Clayton*, 101 F.3d 697 (5th Cir. 1996).

Separately, a case administered under Chapter 11 can be said to have been "substantially

consummated" when the following conditions have been met:

> "(A) transfer of all or substantially all of the property proposed by the plan to be
> transferred; (B) assumption by the debtor or the successor to the debtor under the
> plan of the business or of the management of all or substantially all of the property
> dealt with by the plan; and (C) commencement of distribution under the plan."

11 U.S.C. § 1101(2). The Bankruptcy Code's definition of substantial consummation is "written

in conjunctive terms, thus requiring all three elements to be met in order to find that there has been

substantial consummation." *In re JCP Properties, Ltd.*, 540 B.R. 596, 605 (Bankr. S.D. Tex.

2015). It is clear, based upon a plain reading of the definition of substantial consummation in

conjunction with the Advisory Committee Note to Bankruptcy Rule 3022, that whether a Chapter

11 debtor has substantially consummated its plan has significant bearing on whether a final decree is appropriate.[12]

Before the enactment of the SBRA, a body of case law developed regarding the closure of individual Chapter 11 cases like that of Mr. Lager. Individual Chapter 11 debtors do not receive a discharge upon confirmation of a plan of reorganization. Rather, under 11 U.S.C. § 1141(d)(5)(A), "unless after notice and a hearing the court orders otherwise for cause, confirmation of the plan does not discharge any debt provided for in the plan until the court grants a discharge *on completion of all payments under the plan*." (emphasis added). Court decisions vary widely on whether to grant early discharge and when to close individual Chapter 11 cases.[13]

For certain debtors, the SBRA discharge provision is akin to that of an individual Chapter 11 debtor under section 1141(d)(5) in that a small business debtor who confirms a plan non-consensually under section 1191(b) is not entitled to discharge until the completion of plan payments. *Compare* 11 U.S.C. § 1192 ("as soon as practicable after completion by the debtor of all payments due within the first 3 years of the plan, or such longer period not to exceed 5 years as the court may fix…") *with* 11 U.S.C. § 1141(d)(5) ("confirmation of the plan does not discharge any debt provided for in the plan until the court grants a discharge on completion of all payments under the plan…"). Thus, commensurate with individual Chapter 11 cases, in cases where a small

---

[12] *Compare* 11 U.S.C. § 1101(2)(A) – (C), *with* Fed. R. Bankr. P. 3022, Advisory Committee Note (1991) (incorporating factors (3) – (5), which are substantially similar to the elements of substantial consummation); *see also JCP Properties*, 540 B.R. at 605 (discussing same).

[13] *See, e.g., Shotkoski v. Fokkena (In re Shotkoski)*, 420 B.R. 479 (B.A.P. 8th Cir. 2009) (panel affirmed bankruptcy court's decision to keep the case open, while acknowledging that the decision was within a bankruptcy court's discretion); *In re Mendez*, 464 B.R. 63 (Bankr. D. Mass. 2011) (bankruptcy case need not remain open after confirmation where a discharge has not been entered and plan payments are not completed because bankruptcy court could utilize power to enter "necessary or appropriate" orders in order to close the case for administrative purposes only, without discontinuing the automatic stay); *In re Necaise*, 443 B.R. 483, 493 (Bankr. S.D. Miss. 2010) (where the weight of the factors established that the case had been fully administered, it was proper to close the case despite the fact that a discharge had not yet been entered subject to its reopening at a later time for entry of such a discharge upon completion of plan payments); *In re Belcher*, 410 B.R. 206, 218–19 (Bankr. W.D. Va. 2009) (individual Chapter 11 case was not fully administered until all plan payments have been made).

business debtor confirms its plan of reorganization pursuant to section 1191(b), bankruptcy courts must decide whether and when to close the case prior to discharge, based upon both the traditional analysis of whether the case has been fully administered under the Bankruptcy Rule 3022 factors as well as the newer analysis of whether a case should be "administratively closed", *inter alia*, in order to reduce costs.[14]

## V.    ANALYSIS.

Once again, "[t]he Court finds itself in a similar situation to Goldilocks and the three bears' porridge."[15]   One choice is too hot, forcing all bankruptcy cases confirmed pursuant to section 1191(b) to remain open for at least three years after confirmation and exposing the reorganized small business debtor to potentially significant administrative expenses where there is no explicit statutory requirement for same.   Another choice is too cold, entry of a final decree where the debtor has yet to receive a discharge, prior to the completion of plan payments, and where a Subchapter V trustee may still have duties to perform post-confirmation.   But one choice is just right, that of "administrative closure" upon a finding by the bankruptcy court that the plan has been substantially consummated, subject to reopening for the purpose of entry of discharge or modification of the plan.   For the following reasons, the Court finds that administrative closure of the instant case is proper and consistent with the purpose of the Bankruptcy Code and the SBRA.

In pursuing the Motion, the Reorganized Debtors ask this Court to issue a final decree, thereby closing the above-captioned bankruptcy cases, arguing the Plan has been substantially consummated and the case should be considered fully administered. The Reorganized Debtors

---

[14] *See, e.g., In re Gui-Mer-Fe*, No. 21-01659 (ESL), 2022 WL 1216270, at *7–*8 (Bankr. D.P.R. Apr. 15, 2022) (denying non-consensually confirmed Subchapter V debtor's request for administrative closure of bankruptcy case after substantial consummation, because there was no post-confirmation reporting requirement, plan payments were required to be completed within five years by statute, and the language of the confirmed plan required the Subchapter V trustee to remain in place for the life of the plan).
[15] *In re Poole*, No. 21-32224, 2022 WL 5224087, at *3 (Bankr. N.D. Tex. Sep. 30, 2022).

assert (1) that they have commenced making payments under the Plan, (2) that all assets of the bankruptcy estates have been revested in the Reorganized Debtors and (3) that all motions, contested matters, and adversary proceedings have been resolved.  The Trustee opposes entry of a Final Decree in this case because the Plan was confirmed on a non-consensual basis and argues the Bankruptcy Code requires different treatment of non-consensual cases than either traditional Chapter 11 cases or those Subchapter V cases which are confirmed consensually pursuant to section 1191(a).  The Trustee believes that such a case ***cannot*** be closed until the plan term has run because the Trustee is not permitted to be discharged until after she files a final report.  Further, the Trustee points out that the United States Trustee (the "**UST**") has requested that Mr. Lager file post-confirmation reports detailing the progress of the Plan payments, which would be impossible unless the case remains open.

The Trustee raises an interesting point: the Bankruptcy Code, as amended by the SBRA in 2019, seems to at least contemplate a different set of goalposts specifically for Subchapter V cases that are confirmed non-consensually pursuant to section 1191(b).  Having reviewed the relevant statutory authority and admittedly scant case law addressing this issue, the Court has determined that this is an issue of first impression within this district.  Therefore, the Court will endeavor not simply to address the matter at hand in the instant case, but to address the larger questions of whether and how a non-consensually confirmed Subchapter V case should be closed pending completion of the plan payments.

### A.  The Trustee's Objection

The Trustee's main argument against closing these cases is based primarily on the fact that the Bankruptcy Code contemplates different roles for Subchapter V trustees in cases confirmed pursuant to subsection (b) of 1191, rather than subsection (a).  Ms. Clark argues that in a situation

like the instant case, where the plan has been confirmed non-consensually, the Trustee is ***not
permitted*** to be discharged until the plan term runs, due in part to the fact that she believes she is
unable to file her final report until all payments have been made.

Specifically, the Trustee argues that section 1183(c)(1) of the Bankruptcy Code only allows
a Subchapter V trustee to be terminated upon substantial consummation in cases where the debtor's
plan was confirmed consensually pursuant to 1191(a).  Challenging that assertion, the Reorganized
Debtors point out that although 1183(c)(1) certainly provides that a Subchapter V Trustee's
services terminate upon substantial consummation of a consensual plan pursuant to section
1191(a), the Bankruptcy Code contains no affirmative ***requirement*** that the Subchapter V trustee
remain in place in cases confirmed pursuant to section 1191(b).  As such, the Reorganized Debtors
argue that the Trustee is making a negative inference that is not supported by any statutory
requirement in the Bankruptcy Code.

The Trustee attempts to bolster her position by pointing out that, by statute, a Subchapter
V trustee must "ensure that the debtor commences making timely payments required by a plan
confirmed under this subchapter," and must file a final report, irrespective of whether the trustee
is the distribution agent under the plan.  *See, e.g.,* 11 U.S.C. §§ 1183(b)(1), (4).  The Trustee also
finds support in guidance provided in the Subchapter V Trustee's Handbook (the "**UST
Handbook**"), which is created and disseminated by the UST and provides that in cases where a
plan is confirmed non-consensually pursuant to section 1191(b), "[i]nstead of being terminated,
the trustee will remain in place for the life of the plan, regardless of whether the trustee or the
debtor make the plan payments."[16]

---

[16] *See* 11 U.S.C. § 1183(c)(1); U.S. Dep't of Justice: U.S. Trustee Program, *Post-Confirmation Case Administration:
Defining the Trustee's Post-Confirmation Role*, HANDBOOK FOR SMALL BUSINESS CHAPTER 11 SUBCHAPTER V
TRUSTEES, *available at* https://www.justice.gov/ust/file/subchapterv_trustee_handbook.pdf/dl.

The Reorganized Debtors disagree with the Trustee's interpretation of her statutory duties, pointing out that payments have already "commenced" under the Plan terms and that the Trustee's concern over the timing of her final report is illusory because she is not the distribution agent under the Plan and she has no further statutorily required duties in this case.  The Reorganized Debtors further note that, by its own terms, the UST Handbook is not legally determinative:

> This Handbook represents a statement of operational policy and is intended as a working manual for trustees appointed under Subchapter V of chapter 11 of the Bankruptcy Code and supervised by the United States Trustee.  This Handbook is not intended to represent a complete statement of the law. It should not be used as a substitute for legal research and analysis.[17]

Finally, the Reorganized Debtors argue that the UST Handbook is not entitled to any deference in "the interpretation or construction of the Bankruptcy Code." *See Bolen v. Dengel (In re Dengel)*, 340 F.3d 300, 310 (5th Cir. 2003); *Goodman v. Doll (In re Doll)*, 57 F.4th 1129, 1145 – 46 (10th Cir. 2023); *In re Hecker*, 2022 U.S. App. LEXIS 19847, at *3 (3rd Cir. July 19, 2022).

The Trustee separately notes that there is a lack of transparency in the case following confirmation considering the Reorganized Debtors' role as Plan distribution agent.  For instance, although the UST has requested that the Reorganized Debtors file post-confirmation reports, none have yet been filed and as such, without same, the Trustee asserts that she cannot independently ascertain the status of the case.  Therefore, the Trustee posits that if the Court were to grant the relief requested in the Motion, she will have no indication of when this case would be ripe for her to enter her final report.  Finally, the Trustee argues that because Subchapter V cases do not require payment of quarterly fees to the UST, there would be no benefit gained in closing the instant case prior to completion of the Plan payments.

---

[17] UST Handbook, pp. 1-1, 1-2.

The Reorganized Debtors' view of the Trustee's role and statutory duties is quite different. They argue that one of the main tenets of Subchapter V is the flexibility that it affords small business debtors in fostering reorganization. They point out that allowing the Trustee to remain in place for the life of the Plan term would likely result in additional administrative expenses for the estate. Instead, they suggest that entering a final decree in this case is the proper solution, insisting that if the Trustee's services were to become necessary at some point within the Plan term, then the Trustee could be reappointed pursuant to 11 U.S.C. § 1183(c)(1).

## B.  The Statutory Framework

A central question resulting from this dispute is how the enactment of the SBRA has affected a court's consideration of whether, when, and how to close a bankruptcy case. In answering this question, a deeper analysis of the statutory framework surrounding non-consensual confirmation in Subchapter V cases is merited.

As noted above, one of the key changes that Congress made in enacting the SBRA was allowing a court to confirm a plan of reorganization in a Subchapter V case even if all classes of creditors reject the plan.[18] The Code contemplates different "default" roles for the Subchapter V trustee in cases that are confirmed consensually than in those confirmed non-consensually. Despite this, the Court concludes that the Bankruptcy Code appears to leave some room for interpretation with respect to what role, if any, a Subchapter V trustee must play after cramdown confirmation. There are three recent bankruptcy court decisions meriting discussion.

First, in *In re Gui-Mer-Fe, Inc.*, No. 21-01659 (ESL), 2022 WL 1216270, at *8 (Bankr. D.P.R. Apr. 25, 2022), the Bankruptcy Court for the District of Puerto Rico held that in Subchapter V cases confirmed under 11 U.S.C. § 1191(b), the services of the Subchapter V trustee do not

---

[18] Hon. Paul W. Bonapfel, *A Guide to the Small Business Reorganization Act of 2019*, p. 8 (revised June 2022).

terminate until the completion of plan payments and the Subchapter V trustee files his final report. According to the explicit terms of the confirmation order at issue, the case was ripe for closure after it was determined to be fully administered. The *Gui-Mer-Fe* court clarified that the case would not be "fully administered" until after the full plan term was completed, based in part the difference between a traditional Chapter 11 case, where there is no statutory time limit on plan payments, and Subchapter V, where a case must be completed within three to five years. *Id.*

The *Gui-Mer-Fe* court also denied the debtor's request for administrative closure of the case because it found that there were no administrative costs to be saved by the administrative closure of the case because Subchapter V debtors are exempt from having to pay quarterly fees and they have no post-confirmation reporting requirements pursuant to Bankruptcy Rule 2015. *Id.* As such, the court concluded that a Subchapter V case remaining open until such time as the case was "fully administered" would not generate any excess administrative fees.

Next, in *In re DynoTec*, No. 21-30803, 2024 WL 2003065, at *3 (Bankr. D. Minn. April 5, 2024), the Bankruptcy Court for the District of Minnesota concluded that the Bankruptcy Code allows a debtor to "opt out" of the "default" role contemplated for the Subchapter V trustee in a case confirmed non-consensually. The *DynoTec* court held that this inherent flexibility was no accident but rather intended by Congress when drafting the SBRA. *Id.* The court pointed out that a frugal debtor could request a confirmation order that terminated the trustee's appointment upon substantial consummation of a non-consensual plan, thereby eliminating administrative expenses entirely. *Id.* On the other hand, a more contentious case might justify ongoing administrative expenses in exchange for maintaining the trustee's appointment, but the court specifically held that the scope of a trustee's role should be "right sized" to suit the needs of each case. *Id.*

The *DynoTec* court further noted that section 1183(c) of the Bankruptcy Code permits reappointment of a Subchapter V trustee if necessary to perform the trustee's duties under §§ 1183(b)(3)(C) or 1185(a). *See* 2024 WL 2003065, at *3. Thus, the *DynoTec* court explained, if a trustee were to be discharged in a case confirmed non-consensually and a post-confirmation modification of the plan were to become necessary, the trustee could easily be reappointed at that time. *Id.* After reviewing the potential outcomes, the *DynoTec* court concluded that the Bankruptcy Code provides sufficient flexibility to allow for the discharge of a Subchapter V trustee prior to completion of the plan payments, even where such a case was confirmed non-consensually. *Id.* The court extrapolated that where the confirmation order "expressly relieved the Trustee of any responsibility for the Debtor's plan payments … the trustee's post-confirmation duties were limited to **express statutory duties** under § 1183 only." *Id.* at *2 (emphasis added).

Finally, in a recently published opinion from the Bankruptcy Court for the Northern District of Georgia, *In re Florist Atlanta*, No. 24-51980-pwb, 2024 WL 3714512 at *2–*3 (Bankr. N.D. Ga. Aug. 7, 2024), the Hon. Paul W. Bonapfel reasoned that in a case confirmed non-consensually, where no one has objected to the reorganized debtor serving as plan distribution agent, and post-confirmation reports are either unnecessary or not required by court order, a Subchapter V trustee "will have nothing to do after filing the final report, subject to the possible occurrence of future events that would require trustee services." *Id.* at *3. Thus, the court concluded that "[i]n these circumstances, it is appropriate for the Court to order the termination of the services of the Subchapter V Trustee upon substantial consummation of the plan." *Id.*[19]

The Court finds the *DynoTec* and *Florist Atlanta* reasoning most persuasive. Flexibility and discretion are critical to the purpose of the SBRA – to simplify Chapter 11 reorganizations for

---

[19] The *Florist Atlanta* court cited favorably to *DynoTec*, concurring with the reasoning provided by that court.

small businesses and reduce the administrative costs thereof. *In re Clearly Packaging*, 36 F.4[th]

509, 517 (4th Cir. 2022). The Bankruptcy Code specifically allows a debtor to elect a different role

for its Subchapter V trustee than that which is contemplated as the "default" role in a case

confirmed pursuant to section 1191(b). The scope of a Subchapter V trustee's post-confirmation

services should be thoughtfully tailored to suit the needs of a case, especially where a reorganized

debtor will serve as the plan distribution agent and the Subchapter V trustee's post-confirmation

role is therefore minimal. The breadth of the Subchapter V trustee's post-confirmation role

determines the contours of whether and how to close the case. Accordingly, considering the

statutory framework and myriad factual and legal circumstances resulting in a non-consensually

confirmed plan, the Court concludes that the Bankruptcy Code gives bankruptcy courts discretion

to determine, based upon the specific facts of each case, whether, when, and how a non-consensual

Subchapter V case should be closed prior to entry of discharge.

### C.  What Form of Relief is Proper in the Instant Case?

The Court must consider whether entry of a final decree is proper in these cases, given that

the Reorganized Debtors will not be discharged for another three years, similar to an individual

Chapter 11 case. In answering this question, the Court must also consider whether the Trustee

may be discharged prior to entry of her final report. Alternatively, in the event the Court finds that

entry of a final decree is improper at this time, the Court will consider whether these cases should

be administratively closed and allow for a reopening of the cases for entry of discharge or for

modification.

### 1.  Bankruptcy Rule 3022 Factors Analysis

The Court will start with the traditional analysis of whether this case is ripe for entry of a

final decree. As the Court noted above, there are six factors courts consider in determining whether

a case has been fully administered and thus whether entry of a final decree is warranted. The factors

provide a poignant place from which to begin the analysis of whether and when a final decree is

proper:

> (1) Whether the order confirming the plan has become final, (2) whether deposits required by the plan have been distributed, (3) whether the property proposed by the plan to be transferred has been transferred, (4) whether the debtor or the successor of the debtor under the plan has assumed the business or the management of the property dealt with by the plan, (5) whether payments under the plan have commenced, and (6) whether all motions, contested matters, and adversary proceedings have been finally resolved.

FED. R. BANKR. P. 3022, Advisory Committee Note (1991).  Factor (1) is fulfilled because this

Court signed the Confirmation Order on January 18, 2024.  *See* ECF No. 238.  Factor (2) is

inapplicable because no deposits were required by the plan.  Factor (6) is satisfied because there

are no pending adversary proceedings or contested matters.  Factors (3)-(5) relate directly to

whether the Plan has been substantially consummated, which as this Court noted above, is a

significant factor in deciding whether to enter a final decree.

The first required element of substantial consummation is whether there has been a

"transfer of all or substantially all of the property proposed by the plan to be transferred."  11

U.S.C. § 1101(2)(A).  The Plan, at Article IX, section 4, contemplates the transfer and vesting of

all assets of Mr. Lager and JBL into each of the Reorganized Debtors, respectively.  *See* ECF No.

216, p. 31, ¶ 9.4.  The Confirmation Order provides the same.  *See* ECF No. 236, p. 20, ¶ 5.  The

Plan became effective on February 2, 2024.  *See* ECF No. 241, p. 2; *see also* ECF No. 256, p. 2, ¶

3.  Therefore, the first element of substantial consummation is fulfilled here.

The second required element for substantial consummation is whether there has been an

"assumption by the debtor or by the successor to the debtor under the plan or the business or of

the management of all or substantially all of the property dealt with by the plan."  11 U.S.C. §

1101(2)(B).  In the Motion, the Reorganized Debtors state that they "have assumed the business

and management of the property dealt with by the Plan." *See* ECF No. 256, p. 4, ¶ 9.  The Trustee has not contested this point.  Therefore, the Court concludes that the second element of substantial consummation is fulfilled.

The final element required for substantial consummation is whether there has been a "commencement of distributions under the plan."  11 U.S.C. § 1101(2)(C).  The Reorganized Debtors assert that they have been making payments under the Plan.  *See* ECF No. 256, p. 4, ¶ 9. The Trustee argues that there is no transparency into whether and what extent the Reorganized Debtors are making their required plan payments, but that is not what section 1101(2)(C) requires. The question is whether they have ***commenced*** payments.  The Plan went effective on February 7, 2024.  *See* ECF No. 241.  Under the Plan, the Reorganized Debtors were required to begin making their first distributions to creditors on "the [first] day of the [first] full month following the Effective Date of the Plan."  *See* ECF No. 216, pp. 18–29.  Article XIV of the Plan states that "[f]or purposes of this Plan, substantial consummation shall occur upon the commencement of distributions under the Plan." ECF No. 216, p. 38.   Furthermore, section 1183(c)(2) of the Bankruptcy Code requires a Subchapter V debtor to file notice of substantial consummation "not later than 14 days after the plan of the debtor is substantially consummated." 11 U.S.C. § 1183(c)(2).  On April 16, 2024, the Reorganized Debtors filed this notice, subsumed within the instant Motion.  *See* ECF No. 256, p. 3, ¶ 4 ("The Plan has been substantially consummated[.]"). Additionally, Mr. Vida and Ms. Clark have each been paid in full, and no other creditors have complained of a default.  Payments have undoubtedly commenced. Therefore, the Court concludes that the third element of substantial consummation is fulfilled.

All in all, five of the six factors are present, the only exception being inapplicable to the instant case.  While this six-factor test is often used in determining whether a case has been fully

administered, it should be noted that courts have consistently held that "[t]hese factors merely

serve as a guide."[20]  The only party opposed to the entry of a final decree in this case is the Trustee,

and her objection is not based on a traditional analysis of whether entry of a final decree is

warranted.  Therefore, the Court concludes that under the traditional analysis, this case can be

considered fully administered.

### 2.  The Role of the Subchapter V Trustee

Next, the Court must consider whether, based upon the fact that a final decree is warranted

under the traditional analysis, the Subchapter V trustee may be discharged prior to the completion

of her statutory duties in the case.  The Trustee's main argument against the relief requested is that

she still has duties to fulfill under the Bankruptcy Code, primarily being her duty to file a final

report in compliance with section 1183(b)(1), which incorporates section 704(a)(9).  However, in

cases such as this one, the Court determines that it is appropriate to order the termination of the

services of the Subchapter V trustee after substantial consummation of the plan for two reasons.

First, if the need for a Subchapter V trustee's service arises, the case can be reopened at

that time and the Trustee reappointed in order for her to fulfill her duties in compliance with section

1183(b)(1).[21]  Both the *DynoTec* and *Florist Atlanta* courts each expressly sanctioned such a

result.[22]  Indeed, the Advisory Committee Note to Bankruptcy Rule 3022 expressly states that

---

[20] *Clayton*, 1996 WL 661099, at *1 (citing *In re Mold Makers, Inc.*, 124 B.R. 766, 768 (Bankr. W.D. Ill. 1990)); *see also, e.g., In re Necaise*, 443 B.R. 483, 488 n. 10 (Bankr. S.D. Miss. 2010) (gathering cases that discuss the Advisory Committee Note to Bankruptcy Rule 3022, concluding same).

[21] *See, e.g., Florist Atlanta*, 2024 WL 3714512 at *3 (concluding that the court order discharging the trustee's services would be without prejudice to the reappointment of the Subchapter V trustee, or appointment of another trustee, if appropriate, were any need to arise).

[22] *See, e.g.,* 2024 WL 2003065, at *3 ("a trustee who is terminated after substantial consummation of a non-consensual plan can also be reappointed, or the U.S. Trustee can serve as trustee, 'as necessary,' per § 1183(a)."); *see also, e.g.* 2024 WL 3714512 at *3 ("[t]he termination of the trustee's services, therefore, will be without prejudice to the reappointment of the Subchapter V Trustee (or another subchapter V trustee, if appropriate) if any of these potential events occurs.").

19

"[e]ntry of a final decree closing a chapter 11 case should not be delayed solely because the payments required by the plan have not been completed."[23]

The second reason is the nature of the Trustee's report itself and the facts of this case. Section 704(a)(9) provides that the "trustee shall … make a final report and file a final account of the administration of the estate with the court and with the United States [T]rustee." 11 U.S.C. § 704(a)(9). The purpose of the final report requirement is to ensure that bankruptcy trustees disclose and are held accountable for their handling of the estate. *See Lopez-Stubbe v. Rodriguez-Estrada (In re San Juan Hotel Corp.)*, 847 F.2d 931, 939 (1st Cir. 1988). As part of the report, trustees are required to provide a record of the trustee's receipts and expenditures in the handling of estate assets.

In the instant case, as is the case in most Subchapter V cases, the Trustee did not administer assets on behalf of the estate, as both Mr. Lager and JBL each served as debtors-in-possession throughout the pendency of these cases. The Court finds it significant that Mr. Vida already filed a final report in the JBL Case and received his discharge in due course.[24] Another important factual distinction is that the Trustee is not the distribution agent under the Plan, despite non-consensual confirmation. There was no objection to the Debtors' request to act as the Plan distribution agent. The Confirmation Order provides:

> [t]he Reorganized Debtors, not the Subchapter V Trustee, shall disburse payments as provided by the Plan.

*See* ECF No. 236, p. 25, ¶ 21.

Under similar circumstances, the *Florist Atlanta* court concluded that it was appropriate for a court to order termination of the services of the Subchapter V trustee` and thus ordered the

---

[23] FED. R. BANKR. P. 3022, Advisory Committee Note (1991).
[24] ECF No. 55 in Bankruptcy Proceeding No. 22-30439-mvl11 (Bankr. N.D. Tex. 2024).

trustee in that case to file a final report pursuant to 11 U.S.C. § 1183(b)(1) "within 14 days after the filing of the Debtor's report of substantial consummation." 2024 WL 3714512 at *3. Notably, this language mirrors the function of section 1183(c), which provides for termination of the service of the Subchapter V trustee upon substantial consummation in a consensually confirmed case. In such cases, the Subchapter V trustee is not exempted from their duty to file a final report. *See* 11 U.S.C. §§ 1183(c)(1) – (2). As such, the Court concludes that the Trustee's statutory duty to file a final report in this case is not sufficient cause to keep these cases open, and it is thus appropriate to order the termination of the services of the Subchapter V Trustee.

### 3. Administrative Closure

In the instant case, the Reorganized Debtors sought, in part, to close the case prior to completion of the payments contemplated by the Plan in order to forestall the accrual of administrative expenses. Although quarterly fees are not required for Subchapter V debtor, the UST has requested post-confirmation reports be filed in this case, despite there being no explicit statutory requirement for such post-confirmation reporting in a Subchapter V case. This would lead to some administrative costs for the Reorganized Debtors, both in terms of drafting such reports and because the Trustee would need to review them.[25]

Moreover, the provisions of the Court's prior orders are important. The Confirmation Order provides as follows:

> 21. <u>Closing of the Bankruptcy Case.</u> The Reorganized Debtors, not the Subchapter V Trustee, shall disburse payments as provided by the Plan. Upon (i) the adjudication by the Bankruptcy Court of all applications by professionals for final allowances of compensation for services and reimbursement of expenses and the issuance of a Final Order for each application and the payment of all amounts payable thereunder and (ii) the completion of all other matters in the Bankruptcy Cases, the Reorganized Debtors shall seek authority from the Bankruptcy Court to

---

[25] The Court has no doubt that any costs associated with reviewing such reports would be minimal, and eminently reasonable, as reflected by the reasonableness of the fees requested by the Trustee thus far in this case.

21

close the Bankruptcy Case in accordance with the Bankruptcy Code and the
Bankruptcy Rules.

*See* ECF No. 236, p. 25, ¶ 21.    Accordingly, closure was contemplated **at confirmation**.[26]

Furthermore, the Post-Confirmation Order required the Debtor to "file an application for final

decree" after substantial consummation as defined under 11 U.S.C. § 1101(2).  *See* ECF No. 238.

The instant Motion was filed in compliance with such Order.  Thus, the Reorganized Debtors have

fulfilled both the predicate statutory requirements under the Bankruptcy Code and this Court's

specific requirements under the Confirmation and Post-Confirmation Orders for issuance of a final

decree.

Nevertheless, the Court concludes that entry of a final decree in the instant case would be

inappropriate, based upon the Reorganized Debtors' own stated intention to reopen the case in

three years' time to allow for entry of discharge, especially in light of a logical alternative.  The

Court finds that the best approach is for the case to be "administratively closed" subject to

reopening when the case is ripe for entry of discharge.[27]

## VI.    CONCLUSION.

Based on its review of the pleadings, oral argument, and applicable law, the Court

concludes that the Debtor has established sufficient criteria for the Court to find that the case has

been fully administered pursuant to section 350 of the Bankruptcy Code and Bankruptcy Rule

3022 and administratively closed.  The Court will require the Subchapter V Trustee to file her final

report pursuant to 11 U.S.C. §§ 1183(b)(1) and 704(a)(9) within fourteen days of the entry of this

Order; however, the Court will also require the Reorganized Debtors to provide payment in full

---

[26] The Court encourages parties in future cases to raise any issues with respect to the discharge of the Subchapter V
trustee and closure of the cases *at* confirmation.  The Court finds the fact that (1) there was no objection to the
Debtor acting as the post-confirmation disbursing agent and (2) the Confirmation Order contained a provision for
closure after substantial consummation significant to its analysis hereunder.
[27] *See In re Necaise*, 443 B.R. 483 (Bankr. S.D. Miss. 2010); *In re Johnson*, 402 B.R. 851 (Bankr. N.D. Ind. 2009);
*In re Hilburger*, Nos. 07–3958 K, 08–10866 K, 2009 WL 1515125 (Bankr. W.D.N.Y. May 29, 2009).

for any outstanding fees the Trustee has accrued since confirmation prior to the entry of an order discharging the Trustee.

**IT IS, THEREFORE, ORDERED** that within 14 days after the entry of this Order, the Subchapter V Trustee shall file the final report that 11 U.S.C. § 1183(b)(1) (incorporating 11 U.S.C. § 704(a)(9)) requires; it is further

**ORDERED** that the above-captioned bankruptcy cases shall be administratively closed after the Trustee is paid in full for her post-confirmation services; it is further

**ORDERED** that, if agreement cannot be reached regarding the amount of reasonable fees due to the Trustee for post-confirmation services, the parties shall seek a hearing for determination of such fees; and it is further

**ORDERED** that this case is subject to being re-opened after the completion of the plan payments, upon proper notice and a hearing, in order for the Reorganized Debtors to request entry of a final decree, a discharge order and for the Trustee to file her final report.

**###END OF ORDER###**
